[L. A. No. 3195.  Department Two.—June 10, 1914.]

PINNEY AND BOYLE COMPANY (a Corporation), Appellant, v. LOS ANGELES GAS AND ELECTRIC CORPORATION (a Corporation), Respondent.

CORPORATION — PUBLIC UTILITY — FURNISHING ELECTRICITY TO PRIVATE PERSON—MUNICIPAL REGULATION.—A corporation, engaged in the business of supplying gas and electricity to the inhabitants of a city, in furnishing electricity for power to be used by a private person in his private business, acts in the performance of a public service which can be regulated by the municipality.

ID.—TEST OF PUBLIC SERVICE—DUTY OF PURVEYOR TO SUPPLY PUBLIC.— The use which the consumer makes of the commodity furnished does not constitute the test as to whether or not the regulatory powers of boards or commissions in dealing with public utilities may be invoked. It is the duty which the purveyor or producer has undertaken to perform on behalf of and so owes to the public generally, or to any defined portion of it, as the purveyor of a commodity, or as an agency in the performance of a service, which stamps the purveyor or the agency as being a public service utility.

ID.—LOS ANGELES—POWER TO REGULATE PUBLIC SERVICE CORPORATIONS. The power of regulating public service corporations is expressly conferred on the city of Los Angeles by article I, section 2, subdivision 30, of its charter.

ID.—POLICE POWER—POWER OF MUNICIPALITY NOT LIMITED TO FIXING MAXIMUM RATES.—The rate-fixing powers of a municipality, in its reasonable use of its police power, is not limited to the establishment of the maximum charge which a public utility may make, leaving it open to the utility by agreement to fix a less charge for an

individual consumer. Such a limitation on its power would open the door for abuse by way of favoritism and discrimination within the limit, the prevention of which is one of the primary objects to be attained by rate regulation.

ID.—DENYING CONSUMER RIGHT TO APPLY FOR REDUCTION OF RATES— DISCRIMINATION—DENIAL OF DUE PROCESS OF LAW.—An ordinance of a municipality fixing for the period of one year, and after an opportunity had been accorded the consumers to be heard, the rates to be charged by a public service corporation, and prohibiting the collection of lesser rates, is not rendered discriminatory, nor does it operate to deny to the consumers the equal protection of the law, merely because it contains a provision allowing the corporation to apply for a reduction of rates during the life of the ordinance, and denying such rights to the consumers.

ID.—CONTRACT WITH CONSUMER SUBJECT TO SUBSEQUENT RATE REGULA- TION.—A contract between a public service corporation and a private consumer will be conclusively presumed to have been executed in con- templation of the power of the proper board or tribunal to thereafter fix rates in every case where such power exists and may have been legally exercised.

APPEAL from a judgment of the Superior Court of Los Angeles County. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

John D. Pope, for Appellant.

Wm. A. Cheney, Herbert J. Goudge, Leroy M. Edwards, and Paul Overton, for Respondent.

Albert Lee Stephens, City Attorney, and C. B. Penn, Deputy City Attorney, *Amici Curiae,* for the city of Los Angeles.

HENSHAW, J.—Plaintiff is a corporation which in the conduct of its business uses electrical power to operate its machinery. Plaintiff entered into a contract with the de- fendant to furnish electricity to be so used. Defendant is a public service corporation engaged, as its name implies, in furnishing gas and electricity to the inhabitants of the city of Los Angeles. During the life of this private contract be- tween the parties litigant the city of Los Angeles regulated and prescribed the rates which defendant, with other public

utilities, was permitted to charge for the electricity supplied and the service rendered to consumers. This rate was a higher rate than that fixed by the agreement of plaintiff and defendant. Plaintiff refused to pay the higher rate, insisting that the limit of its liability was the price fixed by contract. Defendant declined to furnish electricity excepting at the rate prescribed by the ordinance of the city of Los Angeles. This litigation followed. Judgment was given in favor of the defendant and plaintiff appeals.

The propositions advanced on appeal may be thus summarized: 1. That furnishing electricity for power to be used as plaintiff was using it in its private business, is not the performance of a public service which can be regulated by the municipality but is a private use governed solely by convention and agreement of the parties; 2. That the particular ordinance is unreasonable and therefore invalid; 3. That the provision of the ordinance making the maximum and minimum rate the same and at the same time denying consumers the right which it gives to the producer to apply for a change or reduction of rate is unconstitutional and void.

1. The contention advanced by appellant under this head may be summarily disposed of. Its position is, in effect, that it is the use which the consumer makes of the commodity furnished which constitutes the test as to whether or not the regulatory powers of boards and commissions in dealing with public utilities may be invoked. Such, however, is not the test. Generally speaking, the public utility can and does have no interest in or control over the commodity which it furnishes when it has passed into the possession of the consumer. It is the duty which the purveyor or producer has undertaken to perform on behalf of and so owes to the public generally, or to any defined portion of it, as the purveyor of a commodity, or as an agency in the performance of a service, which stamps the purveyor or the agency as being a public service utility. Of course, it is true that if A has erected a power plant and has agreed to sell a portion of his electricity to his neighbor B, he is not devoting his property to a public service. But if A shall have erected his power plant and shall have offered to sell his power to the whole or a defined portion of the community, he is, to that extent, devoting his property to a public use and has brought it within the regulatory police powers of the state. This we conceive to be not

only fundamentally true but is the declared view of this court in *Clark* v. *City of Los Angeles*, 160 Cal. 30, [116 Pac. 722].

No question can exist as to the power of the city of Los Angeles in the matter of the regulation of such public service corporations. It is expressly conferred by article I, section 2, subdivision 30, of the charter of the city of Los Angeles. (Amended March 25, 1911.)

2. Under this head appellant asserts the indisputable proposition that courts will declare void ordinances which are unreasonable and oppressive in their attempted exercise of the police power. We need not refer to the cases which are cited since no one of them deals with the rate-fixing and regulation. Appellant asserts, however, that the only reasonable use of the police power in the matter of rate-fixing is to establish the maximum charge which the public utility may make, leaving it open to the public utility by agreement to fix a less charge to an individual consumer. The untenableness of this position, however, must become apparent when a moment's consideration is given to the fact that one of the primary and most important objects to be attained by rate regulation is the prevention of discrimination. It must be quite clear that to hold that the rate-fixing power goes no farther than to name an amount beyond which a charge may not be made leaves the utmost room for abuse by way of favoritism and discrimination within that limit. It is, in practical effect, a denial of the existence of the rate-fixing power, itself. Moreover, while the public utility is bound to render the service or furnish the commodity, an individual member of the public is not compelled to accept the service or use the commodity. If he does so it is conclusively held that his act is an acceptance of the rate fixed and that he may not, thereafter contest the reasonableness of the rate. (*Brooklyn Union Gas Co.* v. *City of New York*, 188 N. Y. 334, [117 Am. St. Rep. 868, 15 L. R. A. (N. S.) 763, 81 N. E. 141]; *Griffith* v. *Vicksburg Waterworks Co.*, 88 Miss. 371, 8 Ann. Cas. 1130, 40 South. 1011].) This salutary rule applies with peculiar force to the condition existing in Los Angeles where the charter itself provides that any person interested in the rate-fixing may file his objections and be given a hearing thereon before final action. (Charter of Los Angeles, sec. 155, subd. 2; amendment of 1911.)

3. Under the third proposition appellant contends that section 5 of the ordinance is unconstitutional. That section provides as follows:

"It shall be unlawful for any person, firm or corporation . . . to charge, demand, collect or receive any rate or compensation for electric current for lighting or power purposes supplied . . . to the city of Los Angeles, or to any inhabitant thereof, less than the rates fixed by this ordinance, unless an application for a reduction in such rate is made by the person, firm or corporation so supplying such electric current for lighting or power purposes and the consent of the board of public utilities thereto is obtained, in the manner hereinafter provided."

The argument is that the provision allowing the public service utility to apply for a reduction of rates during the life of the ordinance and denying that right to the consumer is clearly discriminatory and a denial to the consumer of the equal protection of the law. Herein reliance is placed upon the decision of *Saratoga Springs* v. *Saratoga Gas Co.*, 191 N. Y. 123, [14 Ann. Cas. 606, 18 L. R. A. (N. S.) 713, 83 N. E. 693]. The statute under consideration in that action empowered a commission to fix the maximum price to be charged for gas or electricity in the municipality for a term of three years "and until, after the expiration of such term, such commission shall, upon complaint as provided in this section, again fix the price of such gas or electricity." "No opportunity or right," says the opinion, "is given to the corporation to apply at the end of three years or at any time thereafter, for a new adjustment of the rates. That right is limited solely to the municipal officials or consumers." The court of appeals of New York held that such a statute so fixing the rate for a fixed period of three years and for an indefinite period thereafter, which rate could not be modified or disturbed at the instance of the producer, denied to such producer the equal protection of the law. Appellant argues that the ordinance here under consideration presents the exact converse of this proposition; that it allows the purveyor to make application for reduction within the year's life of the ordinance but denies that right to the consumer. But the cases are in no real sense parallel, as will appear not only on principle but from a further consideration of the New York decision. In this case is presented an ordinance fixing the

rate for the defined and limited period of one year.   Every consumer has been given an opportunity to be heard before the rate was fixed and the right or privilege, whichever it may be called, that is accorded to the public service utility within the year is a right or privilege making clearly for the benefit of the consumer himself since that right or privilege is limited to a request for a reduction of the rate, which reduction, if granted, would benefit and not injure every consumer.   The New York case, however, was a case where by statute the rate was fixed for an indefinite period of time with no right whatsoever to the public utility to be heard upon application for any modification of the rate.   The New York court of appeals found no difficulty in upholding the law in so far as it denied the Gas Company the right to be heard in the matter of refixing the rates for the fixed period of three years.   It was the denial of the right to be heard for the indefinite period thereafter, with the right, however, to the consumer so to be heard which was held to be a denial of the equal protection of the law.   "For," says that court, "we have no difficulty in upholding the provision that the rate would remain as established for the term of three years.   It is urged that circumstances might so alter that before the expiration of the three years a rate which was reasonable at the time it was established would become unreasonable.   This is possible. Nevertheless we think the legislature was justified in enacting some period of repose during which the rate should remain stable."   To sum up on this matter, therefore, it may be said in conclusion that the period of stability and repose fixed by this ordinance is one year.   The consumer had an opportunity to be heard before the rate was finally fixed.   The provision allowing the public utility to petition for a reduction of the rate is one as clearly designed for the benefit of the consumer as of the company itself.   No want of equal protection of the law is here shown.   Quite different would be the case if the company were allowed to petition for an increase of rate during the life of the ordinance without an opportunity to the consumer to be heard upon the question of its maintenance or reduction.   It appears clear therefore that the contention that the appellant is denied the equal protection of the law under the charter and ordinance here under consideration is unfounded.

A word perhaps should be added touching the asserted violation of the provision of the contract between the company and plaintiff by the enforcement of the terms of the regulatory ordinance. Upon this it is sufficient to say that it will be conclusively presumed that the parties contracted in contemplation of the power of the proper board or tribunal to fix rates in every case where such power exists and may have been thereafter legally exercised. (*Louisville & Nashville R. R. Co.* v. *Mottley,* 219 U. S. 467, [34 L. R. A. (N. S.) 671, 45 L. Ed. 297, 31 Sup. Ct. Rep. 265]; *City of Seattle* v. *Hurst,* 50 Wash. 424, [18 L. R. A. (N. S.) 169, 97 Pac. 454]; *Portland Ry. L. & P. Co.* v. *Railroad Comm. of Oregon,* 56 Or. 468, [105 Pac. 709, 109 Pac. 273]; *Knoxville Water Co.* v. *City of Knoxville,* 189 U. S. 434, [47 L. Ed. 887, 23 Sup. Ct. Rep. 581]; *Buffalo East Side R. R. Co.* v. *Buffalo St. Ry. Co.,* 111 N. Y. 132, [2 L. R. A. 284, 19 N. E. 63].)

For these reasons the judgment appealed from is affirmed.

Melvin, J., and Lorigan, J., concurred.