PUBLIC SERVICE COMMISSION OF MONTANA
ET AL. *v.* GREAT NORTHERN UTILITIES CO.

No. 627.   Argued March 23, 24, 1933.—Decided April 10, 1933

*Mr. Francis A. Silver,* with whom *Mr. Raymond T. Nagle,* Attorney General of Montana, was on the brief, for appellants.

*Messrs. M. S. Gunn* and *E. G. Toomey* for appellee.

· Mr. Justice Butler delivered the opinion of the Court.

By this appeal we are called on to decide whether an order of the commission prescribing specific, as distinguished from maximum, rates to be charged for natural gas furnished by a public utility, is repugnant to the due process clause of the Fourteenth Amendment.

The appellee, authorized by a non-exclusive franchise ordinance, has been engaged since 1923 in furnishing natural gas to consumers in Shelby, a Montana city having a population of about 2,000. It has an adequate distribution system. September 21, 1927, the commission instituted an inquiry as to the reasonableness of its rates. The schedule then in force specified for each customer a base rate of 60 cents per thousand cubic feet for the first five thousand and, by steps, lower rates based on monthly consumption.[1] Appellee filed a schedule, effective November 25, 1927, reducing the base rate to 50 cents. The commission approved tentatively and continued investigation.

The Citizens Gas Company, similarly authorized, installed a distribution system and, in October, 1928, commenced furnishing natural gas to consumers in Shelby. Its schedule, specifying a base rate of 35 cents, was approved by the commission. Within a brief period many of appellee's customers left it, and have since obtained their gas from the other company. In November appellee filed and, though the commission did not approve, put in force a schedule specifying a base rate of 20 cents. The commission ordered it to submit evidence as to the reasonableness of such rates. Appellee did not support them as adequate or compensatory, but insisted that under competitive conditions then existing they were justified. And it declared that should the Citizens company meet them it would propose a further reduction.

The commission, January 22, 1929, found the 20 cent schedule too low to yield enough to cover reasonable operating expenses including depreciation; that such rates would tend to imperil or impair appellee's ability dependably to serve; held such schedule contrary to the public

---

[1] All schedules referred to in the opinion similarly specify step rates and are conveniently identified by the highest or base rate.

interest; condemned the 50 cent schedule as unreasonable, and prescribed a base rate of 35 cents, being precisely the same as that filed by the Citizens company and approved by the commission. Appellee refused to charge the rates so ordered, and sued to enjoin the enforcement of the order upon the ground that the commission was not empowered by statute to prescribe specific rates and that the order violated the state constitution and the due process clause of the Fourteenth Amendment. The trial court gave appellee judgment on the pleadings. July 29, 1930, the supreme court sustained the order, reversed the judgment and remanded the case for further proceedings. 88 Mont. 180, 232; 293 Pac. 294.

The Citizens company had filed, January, 1930, and without the commission's approval put in force a schedule naming as a base rate 23 cents but subject to a reduction of 3 cents for prompt payment. The record shows that, notwithstanding appellee's reduction to the base rate of 20 cents and a further reduction, September 1, 1931, to a flat rate of 15 cents, its sales of gas decreased from 129 million cubic feet in 1927 to 106 million in 1928, to 73 in 1929, to 67 in 1930, to 58 in 1931. The sales of the Citizens company have correspondingly increased. During the first seven months of 1932, the latest period for which the figures are given, appellee sold less than 40 million cubic feet and the Citizens company sold over 67 million.

December 22, 1930, appellee brought this suit and dismissed the one in the state court. The district court granted a temporary injunction against the enforcement of the order on the ground that, as the utility necessarily lowered its rates for self-preservation, the order prescribing higher rates was unreasonable and repugnant to the due process clause of the Fourteenth Amendment. In a concurring opinion one of the judges construed the complaint to charge confiscation, and maintained that the

order shows that the commission deliberately disregarded the rule entitling public utilities to a fair return and that this, without further evidence, was sufficient ground for temporary injunction. 52 F. (2d) 802, 805. The commission appealed from the interlocutory decree and this court affirmed. 285 U.S. 524. Upon the final hearing, on evidence taken before an examiner, the district court found that the community is insufficient to support, at rates affording fair return, the competing systems; that the prescribed rates deprive appellee of its right of competition and would fail to produce legitimate operating expenses, taxes, depreciation and a fair return upon the value of appellee's property. As its conclusions of law, the court declared the order invalid and that the interlocutory injunction should be made permanent, 1 F. Supp. 328. It so decreed.

The rights conferred upon appellee by the authorizing ordinance are subject not only to the proper exertion of power of the State to regulate its services and rates, but also to authority of the city to grant to others the privilege similarly to serve. The city was free to admit other purveyors of gas. *Madera Water Works* v. *Madera,* 228 U.S. 454. *Piedmont Power Co.* v. *Graham,* 253 U.S. 193. *Springfield Gas Co.* v. *Springfield,* 257 U.S. 66, 70. The appellee does not complain that the rates imposed upon it by the order differ from those which have been established and are binding on its competitor. The gravamen of its complaint is that the enforcement of the order will deprive it of the "right of competition in rates essential to protection and preservation of its property and business," and of the "right to charge rates concededly less than reasonable rates." The demand for gas in the community served is not sufficient to require both systems, and there is no suggestion that it is likely to become great enough to justify the expenditures made for them. The

facts disclosed by the record compel the conclusion that, if competition shall continue in the future as in the past, appellee will not be able upon any rates within constitutional protection against reduction to earn a reasonable return upon the value of its property employed in the public service. The due process clause of the Fourteenth Amendment safeguards against the taking of private property, or the compelling of its use, for the service of the public without just compensation. *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U.S. 362, 410. *Smyth* v. *Ames*, 169 U.S. 466, 546. *Willcox* v. *Consolidated Gas Co.*, 212 U.S. 19, 41. *Missouri Pacific Ry. Co.* v. *Tucker*, 230 U.S. 340, 347. *Minnesota Rate Cases*, 230 U.S. 352, 434. *Board of Comm'rs* v. *N. Y. Tel. Co.*, 271 U.S. 23, 31. But it does not assure to public utilities the right under all circumstances to have a return upon the value of the property so used. The loss of, or the failure to obtain, patronage, due to competition, does not justify the imposition of charges that are exorbitant and unjust to the public. The clause of the Constitution here invoked does not protect public utilities against such business hazards. *Reagan* v. *Farmers' Loan & Trust Co.*, supra, 412. *Covington & L. Turnpike Co.* v. *Sandford*, 164 U.S. 578, 596. *Smyth* v. *Ames*, supra, 544–545. *San Diego Land & Town Co.* v. *Jasper*, 189 U.S. 439, 446. *Darnell* v. *Edwards*, 244 U.S. 564, 569–570. *Aetna Insurance Co.* v. *Hyde*, 275 U.S. 440, 447, 448.

But appellee, having undertaken to serve under conditions permitting competition, now insists that it has a constitutional right by unrestrained cutting of rates to destroy the competitor. And for that purpose it has made reductions from the 60 cent schedule in force until shortly before the Citizens company entered the field to the flat rate of 15 cents, which yields less than the necessary cost of the service. The commission found that the

rates specified in the 20 cent schedule are too low, unreasonable, liable to impair the service, and contrary to the public interest. The decision of the state supreme court is to the same effect. 88 Mont. 180, 218; 293 Pac. 294. The facts disclosed by the record are not sufficient to show that the exertion by the commission of its power to prescribe specific rates was arbitrary or an infringement of any constitutional right of the appellee. See *Stephenson v. Binford*, 287 U.S. 251, 273 *et seq. United States v. Illinois Central R. Co.*, 263 U.S. 515, 525. *Mapleton v. Iowa Public Service Co.*, 209 Ia. 400, 404, 407; 223 N.W. 476. *Economic Gas Co. v. Los Angeles*, 168 Cal. 448, 450; 143 Pac. 717. *Community Natural Gas Co. v. Natural Gas & Fuel Co.*, 34 S.W. (2d) 900, 902. *Farmersville v. Texas-Louisiana Power Co.*, 55 S.W. (2d) 195, 200.

The appellee contends that the rates prescribed by the order are so unreasonably low as to deprive it of just compensation. The appellants maintain that no such question is presented by the record. The complaint was grounded upon the claim, not that the rates were too low, but that the order prevented appellee from charging lower ones. It prayed judgment that it be allowed to charge less than the rates prescribed in the order. After the evidence was taken, appellee proposed an amendment. It merely alleged that the rates prescribed " are not sufficient to furnish plaintiff a fair or any return on the value of its gas plant or system and such rates, if made effective, would confiscate and deprive this plaintiff of its property " without due process of law. Appellee here admitted that its purpose in asserting the belated claim that the rates specified in the order are too low was not that it might collect more for its services but that it might continue, once the order was set aside, to serve at a loss and so if possible force the other company out of the field. It is a well-established rule that an allegation merely asserting in general language that rates are con-

fiscatory is not sufficient and that, in order to invoke con-
stitutional protection, the facts relied on must be specifi-
cally set forth and from them it must clearly appear that
the rates would necessarily deny to plaintiff just compen-
sation and deprive it of its property without due process
of law. *Aetna Insurance Co.* v. *Hyde, supra,* 447. This
allegation is not sufficient.

*Reversed.*